| | |
|---|---|
| **HARLEYSVILLE LAKE STATES** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CAUSE NO. 1:06-CV-00397** |
| | ) |
| **GRANITE RIDGE BUILDERS, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Before the Court in this declaratory judgment action advanced by an insurer against its

insured are two motions for partial summary judgment, one filed on October 15, 2007, by

Defendant Granite Ridge Builders, Inc., and its associated Defendants in this action (collectively

"Granite Ridge") (Docket # 49), and the other filed on October 19, 2007, by Defendant Design

Basics, Inc. (Docket # 51). Defendants contend in their motions that they are entitled to partial

summary judgment as a matter of law on the issue that Plaintiff Harleysville Lake States

Insurance Company should be estopped from asserting insurance policy defenses against Granite

Ridge. Defendants assert that estoppel is appropriate because Harleysville defended Granite

Ridge in the underlying copyright infringement lawsuit for an extended period of time after it

became aware of its policy defenses without ever reserving its rights under the policy. The

motions are now fully briefed.[1]

---

[1] After it filed a Federal Rule of Civil Procedure 56(f) motion (Docket # 53) and was granted leave to
perform additional discovery (Docket # 58), Harleysville filed its response to Defendants' summary judgment

Pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and

Northern District of Indiana Local Rule 72.1(d)(1), District Judge Theresa Springmann referred

the motions for partial summary judgment to the undersigned Magistrate Judge on October 6,

2008, for the issuance of a Report and Recommendation. (Docket # 122.) Having reviewed the

record, the undersigned Magistrate Judge recommends that Defendants' motions be GRANTED.

This Report and Recommendation is based on the following facts and principles of law.

## II. FACTUAL BACKGROUND[2]

### A. Granite Ridge Is Sued By Design Basics

On March 10, 2006, Design Basics, Inc., a corporation engaged in the business of

publishing and licensing architectural designs, filed a complaint for copyright infringement

against Granite Ridge, a home builder, alleging that Granite Ridge had willfully infringed Design

Basics's copyrights in certain architectural plans by reproducing unauthorized copies of the plans

and by building houses using the copied plans. (Compl. for Declaratory J. ¶¶ 16, 21); *see Design*

*Basics, Inc. v. Granite Ridge Builders*, No. 1:06-cv-72 (N.D. Ind., filed March 10, 2006). On

March 27, 2006, Granite Ridge's insurance agent, SourceOne Group, Inc., d/b/a SourceOne

Insurance ("SourceOne"), submitted a notice of Design Basics's claim against Granite Ridge to

Harleysville, including a copy of the complaint. (Pratico Aff. ¶ 5, Ex. B; DenHouter Aff. ¶ 6, Ex.

---

motions on June 24, 2008 (Docket # 94), and Defendants then replied on July 18, 2008 (Docket # 103, 105). With the Court's permission, Harleysville filed a sur-response on September 26, 2008 (Docket # 118), and Defendants filed sur-replies on October 27, 2008 (Docket # 124, 125).

    Also pending before the Court in conjunction with the motions for partial summary judgment are two motions filed by Harleysville, which are also ripe – the first, a motion to strike paragraph 6 of the affidavit of Defendant Anthony Reincke (Docket # 93), and the second, a motion for oral argument on the partial summary judgment motions (Docket # 116).

    [2] For summary judgment purposes, the facts are recited in the light most favorable to Harleysville, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

B.)

### B. *Granite Ridge Initially Contacts Baker & Daniels for Assistance With the Suit*

After performing some initial research, Scott Hueber, Executive Vice President of Granite

Ridge, determined that Granite Ridge needed an intellectual property attorney to assist it with the

Design Basics lawsuit. (Hueber Dep. 5, 33-39.) After researching various law firms, Hueber

contacted Baker & Daniels, LLP. (Hueber Dep. 38-39.)



### C. *Harleysville Communicates With Granite Ridge Regarding Its Desire to Reserve Its Rights and Retains Robert Kabisch As Defense Counsel for Granite Ridge*

On March 30, 2006, Larry Berklich, litigation specialist with Harleysville, spoke by

telephone with Hueber and Kathy Hartman, Vice-President of Granite Ridge. (Berklich Dep. 25.)

He explained to them that there were potential coverage problems based on the infringement

3

exclusions and the knowing violation of the rights of another exclusion in the Harleysville

insurance policy, and that other policy provisions may exclude coverage for Design Basics's

claims as well.[3] (Berklich Dep. 25, 36, 44.)

On March 31, 2006, Berklich sent a letter via U.S. Postal Service, regular mail, addressed

to "Ms. Kathy Hartman, Granite Ridge Builders, Inc., 1020 Woodland Plaza Run, Fort Wayne,

MI 46804" and copied to "SourceOne Group, LLC," which stated:



(J.A. Tab 6; Berklich Dep. 20-21.) Apparently, Berklich did not realize at the time that he had

misaddressed the letter, as the parties acknowledge that Granite Ridge is located in Fort Wayne,

Indiana, *not* Michigan, and that its zip code is 46825, *not* 46804 (*See* Reincke Aff. ¶ 4; Hartman

---

[3] Berklich states that he spoke with Granite Ridge representatives on at least one other occasion regarding the knowing violation exclusion possibly precluding coverage under the policy, but does not recall the date of such conversation. (Berklich Dep. 43.)

Aff. Ex. A; Pl's Sur-Resp. In Opp'n to Defs.' Mots. for Partial Summ. J. 4); no address for SourceOne was reflected on the letter (J.A. Tab 6). Hartman and SourceOne attest that they never received the letter.[4] (Hartman Aff. ¶ 5, Ex. B; Pratico Aff. ¶ 6, Ex. C; DenHouter Aff. ¶ 7, Ex. C.)

On April 3, 2006, Berklich sent an e-mail to Hueber and Hartman at Granite Ridge that reflected an "Initial Reservation of Rights [was] attached." (J.A. Tab 3 at 82.) However, no document was actually attached to the e-mail. (J.A. Tab 3 at 100.)

On April 11, 2006, Berklich sent Hueber another e-mail informing him that Harleysville had retained attorney Robert Kabisch of the law firm Hunt, Suedhoff, and Kalamaros to defend Granite Ridge in the Design Basics suit, that Harleysville was having a "coverage opinion done," and that Harleysville intended to defend the suit "under a full reservation of rights."[5] (J.A. Tab 3 at 99.) Hueber replied to Berklich's e-mail, notifying him that his April 3 e-mail claiming that an "initial reservation of rights [was] attached" actually had no attachment. (J.A. Tab 3 at 100.) Nevertheless, Berklich did not re-send the document.

Three days later, on April 14, 2006, Berklich spoke by telephone with Hartman and Hueber and again told them that he was sending a reservation of rights letter. (J.A. Tab 47 at E-6.) During the conversation, Hartman and Hueber indicated that they understood that Harleysville was defending under a reservation of rights and asked if Granite Ridge could use its

---

[4] Defendants state that the first time they saw this letter was when it was presented to their counsel on the second day of the Court-ordered judicial settlement conference that commenced on August 1, 2007. (Reincke Aff. ¶ 3, Ex. A; Docket # 36, 37.)

[5] Kabisch filed an appearance on Granite Ridge's behalf on April 18, 2006. *See Design Basics,* No. 1:06-cv-72.

5

own counsel; Berklich responded that Granite Ridge could do so at its own expense. (J.A. Tab 47 at E-6; Berklich Dep. at 37.) Hartman and Hueber then stated that they were "okay" with using Kabisch, but would most likely keep Granite Ridge's personal counsel in the loop during the defense of the suit. (J.A. Tab 47 at E-6.)

The April 14 phone call was the last communication that Berklich can recall having with Granite Ridge. (Berklich Dep. 59.) Though he drafted a subsequent and more specific reservation of rights letter to Granite Ridge ▮▮▮▮▮▮▮▮▮▮ Berklich never sent it, and it remained in his file marked as a draft dated April 18, 2006. (J.A. Tab 47 Supplemental Resp. to #6 to Design Basics' First Req. for Interrogs.; Berklich Dep. 35, 42-43, 54-55.) Berklich stated in his deposition that he "do[esn't] know" why he failed to send the letter, admitting that it was Harleysville's policy to send a formal, detailed reservation of rights letter.[6] (Berklich Dep. 42-43, 57-58, 63-64, 95.)

Soon after Harleysville retained Kabisch, Granite Ridge ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ requested that Harleysville instead

retain Kightlinger & Gray, another law firm on Harleysville's "approved list" of attorneys. (Hartman Dep. Part I 55-56; Hueber Dep. 60-61, 64, 90; Berklich Dep. 121-22, 124-25.) To that

end, Vince Heiny of Haller & Colvin, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contacted Dick Young of Kightlinger & Gray on

April 19, 2006, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6] By June 16, 2006, Berklich asked his supervisor to split the file with another adjustor because he felt it was improper for him to handle both the defense and the coverage issues considering that Harleysville needed a full reservation of rights and intended to file a declaratory judgment action. (Berklich Dep. 49-50; Berklich Aff. ¶ 7.) Berklich, however, does not recall ever informing Granite Ridge of the file-split, though he remembers that he received an inquiry from Joy DenHouter of SourceOne on June 20 after she received notice that Harleysville set up a second file on the matter. (Berklich Dep. 50-51; Berklich Aff. ¶ 7.)

███████████████████████████████████

███████████████████████████████████

On April 21, 2006, Berklich spoke with DenHouter of SourceOne and told her that Harleysville planned to defend Granite Ridge in the Design Basics suit under a full reservation of rights. (Berklich Aff. ¶ 6.)

On April 26, 2006, DenHouter and Paul Pratico of SourceOne met with Hartman, Hueber, Tony Reincke (President of Granite Ridge), and Olly Urschal (Granite Ridge's accountant) to discuss the Design Basics suit. (Pratico Dep. 12-14, 20-21; DenHouter Dep. 21; Hueber Dep 132-33.) At the meeting, DenHouter indicated that Harleysville contested whether the Design Basics claims were covered under Granite Ridge's policy, and Pratico stated that he did not believe the claims were covered by insurance. (DenHouter Dep. 48-49; Pratico Dep. 14.) DenHouter further advised the Granite Ridge representatives that it needed one law firm to defend the Design Basics suit and a second law firm to evaluate insurance coverage issues. (DenHouter Dep. 18.)

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████████████████████████████

### D. At Granite Ridge's Request, Harleysville Switches Granite Ridge's Defense From Kabisch to Erin Clancy of Kightlinger & Gray

On May 1, 2006, Berklich "discussed ▆▆▆▆ with Dick Young [of] Kightlinger & Gray." (J.A. Tab 47 at F-34.) Just three days later, Harleysville retained Erin Clancy of Kightlinger & Gray to defend Granite Ridge in the Design Basics suit, and she filed an appearance in the suit on their behalf.[8] (Hartman Dep. Part I 54, 57; Clancy Aff. ¶ 4); *see Design Basics*, No. 1:06-cv-72. Kabisch then later withdrew his representation. S*ee Design Basics*, No. 1:06-cv-72.

On the same day that Clancy filed her appearance, ▆▆▆▆▆

▆▆▆▆▆

▆▆▆▆▆

▆▆▆▆▆

▆▆▆▆ Baker & Daniels ▆▆▆▆

▆▆▆▆ never filed an appearance on Granite Ridge's behalf in the action.[9] (J.A. Tab 42); *see Design Basics*, No. 1:06-cv-72. In that vein, Hartman testified that from the time Kightlinger & Gray was retained up until Harleysville filed the declaratory judgment action, Granite Ridge did not consult with other attorneys concerning the Design Basics matter. (Hartman Dep. Part I 52-58, Part II 39-40.)

---

[8] About this same time, attorney Philip Kalamaros was retained by a different insurer to defend different Granite Ridge entities in the Design Basics suit. (J.A. Tab 3 at 118, Tab 47 at E-10); *see also Design Basics*, No. 1:06-cv-72.

[9] ▆▆▆▆▆

### E. Much of Clancy's Communications Between May 4, 2006, and December 13, 2006, Were With Harleysville, Not Granite Ridge

Clancy acknowledges that she was required to follow Harleysville's billing and litigation guidelines in her representation of Granite Ridge in the Design Basics suit. (Clancy Aff. ¶ 15; Berklich Dep. 73-74; *see generally* J.A. Tab 38.) These guidelines required pre-approval for certain key aspects of the defense, that is, discovery, retention of experts, and research, and gave Harleysville control over settlement. (J.A. Tab 38.)

Clancy explains that between the period of May 3, 2006, and December 13, 2006 (the date Harleysville filed the declaratory judgment action), much of her written communications with respect to the Design Basics suit█████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████were sent to Berklich or another adjustor at Harleysville without being copied to Granite Ridge or any other law firm. (Clancy Aff. ¶¶ 5-11.) She also acknowledges that during this same time period she had telephone conferences with Berklich or another Harleysville adjustor that did not include Granite Ridge or any other law firm.[10] (Clancy Aff. ¶ 13.) Clancy

---



states, however, that she did at times share the content of some of her communications and evaluations with employees at Granite Ridge. (Clancy Aff. ¶ 12.)

*F. On December 13, 2006, Harleysville Files the Declaratory Judgment Action*

On December 13, 2006, approximately nine months after SourceOne first notified Harleysville of the Design Basics lawsuit, Harleysville filed this action seeking a declaratory judgment that it owes no duty under its insurance policy to defend or indemnify Granite Ridge in the Design Basics suit. (Compl. for Declaratory J. ¶¶ 27, 28.) Harleysville's complaint sets forth the policy exclusion of "knowing violation of the rights of another" as its basis for seeking declaratory judgment against Granite Ridge. (Comp. for Declaratory J. ¶ 14.)

## III. THE PARTIES' ARGUMENTS

Defendants assert in their motions that they are entitled to partial summary judgment as a matter of law that Harleysville should be estopped from asserting insurance policy defenses against Granite Ridge. Defendants contend that estoppel is appropriate because Granite Ridge never received a reservation of rights letter from Harleysville, and Harleysville controlled Granite Ridge's defense for approximately nine months after it became aware of its coverage defenses but before it filed this declaratory judgment action, causing Granite Ridge to suffer prejudice as a matter of law.

In response, Harleysville contends that there is a material factual dispute as to whether its initial reservation of rights letter was sent; it further asserts that even if Granite Ridge did not receive the letter, it effectively reserved its rights through Berklich's oral and e-mail

10

communications. Harleysville also argues that there are material factual disputes concerning

whether Granite Ridge had the opportunity to reject Harleysville's tender of defense, whether

Harleysville had full control of Granite Ridge's defense, and whether Granite Ridge was

prejudiced by Harleysville's delay in reserving its rights.

## IV. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of

material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court

"may not make credibility determinations, weigh the evidence, or decide which inferences to

draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for

summary judgment is "to decide, based on the evidence of record, whether there is any material

dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.

1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must

construe the record in the light most favorable to the nonmoving party and avoid "the temptation

to decide which party's version of the facts is more likely true," as "summary judgment cannot be

used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary

judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a

genuine issue of material fact for trial." *Id.* at 771.

## V. DISCUSSION

### A. Applicable Law Regarding an Insurer's Reservation of Rights

When sitting in diversity, the court applies the law of the state originating the

controversy, "attempting to predict how the [state] Supreme Court would decide the issues

11

presented." *Smith v. Equitable Life Assurance Soc. of the U.S.*, 67 F.3d 611, 615 (7th Cir. 1995). Through their briefing, it is apparent that the parties agree that Indiana law applies to this dispute.

"When an insurer questions whether [a third] party's claim falls within the scope of policy coverage or raises a defense that its insured has breached a policy condition, the insurer essentially has two options: (1) file a declaratory judgment action for a judicial determination of its obligations under the policy; or (2) hire independent counsel and defend its insured under a reservation of rights." *Safe Auto Ins. Co. v. Am. Family Mut. Ins.* Co., 890 N.E.2d 737, 743 (Ind. Ct. App. 2008) (quoting *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1258 (Ind. Ct. App. 2002)); *see also Gallant Ins. Co. v. Wilkerson*, 720 N.E.2d 1223, 1227 (Ind. Ct. App. 1999). As the parties observe in their briefing, no Indiana court has outlined the proper contents of a reservation of rights letter. Consequently, the parties turned for guidance to the writings of several expert commentators concerning the purpose and content of such letters.

As the commentaries discuss, "[t]he purpose of reservation of rights letters is to enable insureds to make informed decisions as to whether they should, because of the existence of conflicts of interest between themselves and their insurers, take some action in order to protect their interests." Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds* § 2.14 (5th ed. 2007). "An insurer, therefore, should set out in its reservation of rights letter every reason of which it is aware, or should then be aware, why the insured might not ultimately be entitled to coverage." *Id.* (footnote omitted); *see also* Judith F. Goodman & Sue C. Jacobs, *Law & Practice of Insurance Coverage Litigation* § 8.9 (David L. Leitner et al. eds. 2007) ("General statements that purport to reserve all rights a carrier might have under its policy are inadequate. The insurer must specifically identify and quote all relevant

12

policy language and all of the coverage defenses upon which it is relying."); Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 202.48 (3d ed. 2000) ("The insurer's reservation of rights letter must contain all applicable coverage defenses.").

"The insurer must avoid ambiguity, since any ambiguity in the reservation of rights will be resolved against the insurer." Goodman & Jacobs § 8.9. To avoid ambiguity, certain elements should be included in a reservation of rights letter, including (i) specific identification of the policy at issue; (ii) a description of the claims or allegations in the complaint, including details of the facts known at that time; (iii) citation and quotation of each policy provision forming the basis of the insurer's coverage defenses, including an explanation of why each provision could cause denial of coverage; (iv) a specific reservation of the insurer's right to change its coverage position and to assert defenses based on any of the policy provisions, even if not specifically set forth in the letter; (v) a detailed explanation of the claim investigation that will be undertaken to determine the insurer's ultimate coverage decision and when that decision should be expected; and (vi) an advisement of any issues that actually or potentially give rise to a conflict of interest between the insurer and insured. *See* Peter Kalis, et al., *Policyholder's Guide to the Law of Insurance Coverage* § 24.04 (1998 & Supp. 2007); Jerold Oshinsky & Theodore A. Howard, *Practitioner's Guide to the Law of Insurance Coverage* § 2.05 (2nd ed. 1998 & Supp. 2007); Goodman & Jacobs § 8.9.

As to the timing of a reservation of rights letter, once the insurer determines that it has a duty to defend, it should send the letter "prior to assuming the insured's defense, or within a reasonable time thereafter." Windt § 2.14; *see* Oshinsky & Howard § 2.05 ("There are two basic requirements for reservations of rights and disclaimers of coverage: (1) they must be given in a

13

timely fashion; and (2) they must be made with specificity"). Sometimes an insurer may need additional time to analyze the existence of coverage and thus it may send a general reservation of rights letter; however, the insurer must then supplement the reservation of rights letter as soon as it learns of its specific defenses. Windt § 2.14.

### B. No Reasonable Factfinder Could Conclude That Granite Ridge Received Harleysville's Letter Dated March 31, 2006

Harleysville contends that on March 31, 2006, it sent via U.S. Postal Service, regular mail, an initial reservation of rights letter to Hartman of Granite Ridge, with a copy to SourceOne. Both Hartman and SourceOne, however, attest that they never received it.

Generally, under Indiana law, "[w]hen a letter, properly addressed and stamped, is deposited in the post office, the presumption arises that such letter arrived in due course at its destination." *Am. Family Ins. Group v. Ford*, 293 N.E.2d 524, 526-27 n.5 (Ind. Ct. App. 1973); *see also Conrad v. Universal Fire & Cas. Ins. Co.*, 686 N.E.2d 840, 842-44 (Ind. 1997). "However, when the failure of such letter to arrive has been established, there conversely arises the presumption that it was never mailed." *Am. Family Ins. Group*, 293 N.E.2d at 526-27 n.5.

Here, the record shows that the March 31, 2006, letter from Harleysville to Hartman was incorrectly addressed, in that it set forth the wrong state and wrong zip code.[11] Therefore, the presumption that the letter was mailed does not arise. Furthermore, Harleysville has produced no evidence to counter the affidavits of Hartman and the two SouceOne principals, DenHouter and Pratico, who state that they never received the letter.

Consequently, on this record, no reasonable factfinder could conclude that Harleysville's

---

[11] Notably, Harleysville had Granite Ridge's correct address in its file as on March 24, 2006, Harleysville sent a declination of coverage letter on an unrelated claim to Harleysville's correct address. (Hartman Aff. Ex. A.)

14

letter dated March 31, 2008, was ever received by Granite Ridge.

> *C. Even if Granite Ridge Had Received Harleysville's March 31
> Letter, It Lacks Sufficient Detail to Constitute an Effective
> Reservation of Rights and Was Never Supplemented*

Even if Granite Ridge had received Harleysville's letter dated March 31, 2008, it does not

constitute an effective reservation of rights because it fails to include essential detail and

Harleysville never sent a supplemental, more detailed letter.

To explain, the March 31 letter does not contain any description of the claims brought by

Design Basics nor any details of the facts as known at that time. *See* Goodman & Jacobs § 8.9;

Oshinsky & Howard § 2.05; Kalis § 24.04. Even more importantly, the letter fails to quote or

identify the policy provision(s) upon which its coverage defenses might be based and explain

why such policy provision(s) could cause denial of coverage. *See* Goodman & Jacobs § 8.9;

Oshinsky & Howard § 2.05; Kalis § 24.04.

Also, ███████████████████████████████████████ it does not

address the potential conflict of interest between Harleysville and Granite Ridge and why such

conflict might necessitate personal counsel. *See* Oshinsky & Howard § 2.05; Kalis § 24.04.



Consistent with this plan, on April 18 Berklich drafted a more

detailed reservation of rights letter to Granite Ridge, setting forth three specific policy provisions

upon which its coverage defenses were based. (J.A. Tab 7.) However, *Harleysville never sent the*

*more detailed reservation of rights letter to Granite Ridge*, and is at a loss now to provide an

15

explanation for its failure to do so.

Admittedly, Harleysville's March 31 letter contains enough information that it likely provides at least "bare notice" of its reservation of rights. *See Cowan v. Ins. Co. of N. Am.*, 318 N.E.2d 315, 326 (Ill. App. 1974). Yet, the Illinois Court of Appeals, to which the Indiana Court of Appeals recently turned for guidance in its decision in *Founders Insurance Co. v. Olivares*, 894 N.E.2d 586, 594 (Ind. Ct. App. 2008), a case involving an insurer's attempted reservation of rights, has stated: "[B]are notice of a reservation of rights is insufficient; the notice must make specific reference to the policy defense which ultimately may be asserted and to the potential conflict of interest." *Royal Ins. Co. v. Process Design Assocs., Inc.*, 582 N.E.2d 1234, 1239 (Ill. App. Ct. 1991); *see also* Oshinsky & Howard § 2.05 ("'Bare notice' is insufficient."). That is, "a reservation of rights must . . . adequately inform the insured of the rights which the insurer intends to reserve, 'for it is only when the insured is adequately informed of the potential policy defense that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer.'" *Id.* (quoting *Cowan*, 318 N.E.2d at 326).

Therefore, even if Granite Ridge had received Harleysville's letter dated March 31, 2008, the letter does not constitute an effective reservation of rights because it fails to include essential detail, and Harleysville admits it never sent a supplemental, more detailed letter.

### D. Harleysville's Oral and E-mail Communications Do Not Constitute a Reservation of Rights

Not to be deterred, Harleysville argues that even if Granite Ridge never received its March 31 letter, it still adequately reserved its rights through Berklich's oral and e-mail communications. On that score, Harleysville emphasizes that Berklich sent two e-mails

16

concerning its reservation of rights and informed Granite Ridge on several occasions via telephone that it intended to defend Granite Ridge in the Design Basics suit under a reservation of rights, specifically mentioning in at least two calls that the infringement exclusions and the knowing violation of the rights of another exclusions applied.

To begin, Berklich's two e-mail communications, however, are devoid of the specific information necessary for an effective reservation of rights. To explain, in his April 3 e-mail, Berklich noted that an "Initial Reservation of Rights [was] attached" but then failed to attach any document to the e-mail, a fact which Granite Ridge pointed out to Berklich and that he still failed to remedy. (J.A. Tab 3 at 82, 100.) And, in his April 11 e-mail, Berklich stated that he was "having a coverage opinion done" and that in the mean time he had referred the matter to Kabisch to waive service and file a responsive pleading, further stating: "I will be defending under a full reservation of rights. I will get that to you early next week." (J.A. Tab 3 at 99.) Thus, clearly Berklich's two e-mail communications fall short of adequately informing Granite Ridge of the potential policy defenses and Harleysville's potential conflict of interest given its likely control over Clancy's representation, so that Granite Ridge could "intelligently choose" between retaining its own counsel or accepting the tender of defense counsel from Harleysville. *Olivares*, 894 N.E.2d at 594 (citing *Royal Ins. Co.*, 582 N.E.2d at 1239).

Admittedly, when viewing the facts in the light most favorable to Harleysville, Berklich's telephone conversations with Granite Ridge were more detailed in nature than his written communications with respect to the specific policy provisions that may exclude coverage. Berklich states that in his March 30 telephone conversation (and on at least one other occasion that he cannot specifically identify), he explained to Granite Ridge representatives that there were

17

potential coverage problems based on the infringement exclusions and the knowing violation of the rights of another exclusion and that other policy provisions may exclude coverage of the Design Basics claims as well. Berklich also reports that during his telephone conversation on April 14, Hartman and Hueber indicated that they understood Harleysville was defending under a reservation of rights and asked if Granite Ridge could continue retaining its own counsel.

However, there is no legal precedent in Indiana law for an oral reservation of rights. In fact, there is very little precedent in *any* jurisdiction for the oral reservation of rights, as Harleysville cites just two cases and one commentary (which cites one of the two cases) for the premise. *See State Farm Fire & Cas. Co. v. Jioras*, 29 Cal. Rptr. 2d 840, 846 n.12 (Cal. Ct. App. 1994); *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1181-82 (7th Cir. 1994) (applying Illinois law); Windt § 2.7 at 40-41, 40 n.35 (citing *Jioras*, 29 Cal Rptr. 2d at 46 n.12). Indeed, oral notice, which triggers hearsay issues and by its very nature lends itself to ambiguity, is seemingly at odds with the very purpose behind a reservation of rights letter – that is, to notify an insured with "specificity" of the relevant policy language and all the coverage defenses upon which the insurer is relying so that an insured can make an "informed decision" whether it should take some action to protect its interests due to a conflict of interest with the insurer.[12] *See* Oshinksy & Howard § 2.05; Windt § 2.14; Goodman & Jacobs § 8.9.

In fact, even if an oral reservation of rights is possible in Indiana as a matter of law, when viewing the facts in the light most favorable to Harleysville, Berklich's oral communications are inadequate to reserve Harleysville's rights for at least two reasons. First, Harleysville fails to

---

[12] Pointedly stated, an oral reservation of rights is likely to generate a dispute concerning what was in fact said and leads to exactly the kind of expensive, protracted litigation (both here and in the underlying suit) Granite Ridge is now experiencing.

18

point to any evidence that it discussed with Granite Ridge, whether orally or by e-mail, Harleysville's potential for conflict of interest given its likely control over Clancy's representation. *See* Oshinsky & Howard § 2.05; Kalis § 24.04; *see generally Armstrong Cleaners, Inc. v. Erie Ins. Exch.*, 364 F. Supp. 2d 797, 814-15 (S.D. Ind. 2005) (articulating that the cost of independent counsel is to be paid by the insurer when a conflict of interest exists).

And second, in Berklich's April 14 conversation with Granite Ridge, which he admits was his last communication with Granite Ridge, Berklich specifically told Hartman and Hueber that he was sending a reservation of rights letter to Granite Ridge. Yet, Harleysville never did so; thus, it never supplemented Berklich's oral conversations with the reservation of rights letter that Berklich *promised, both orally and by e-mail, to send,* creating inconsistency and ambiguity in Berklich's communications. *See* Goodman & Jacobs § 8.9 ("The insurer must avoid ambiguity, since any ambiguity in the reservation of rights will be resolved against the insurer."); *see generally Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) ("[W]here there is ambiguity, insurance policies are to be construed strictly against the insurer . . . ." (citation omitted)). Harleysville then retained Clancy on Granite Ridge's behalf just a few weeks later and proceeded to defend Granite Ridge, never again mentioning the reservation of rights to Granite Ridge.

For these reasons, we think that Berklich's oral communications seemingly constitute, at best, "bare notice" of Harleysville's reservation of rights. *See Cowan*, 318 N.E.2d at 326. However, as explained *supra*, we construe "bare notice" of a reservation of rights to be insufficient under Indiana law, *id.*; Oshinsky & Howard § 2.05, as it fails to adequately inform the insured of the potential policy defenses so that it can "intelligently choose" between retaining

19

its own counsel or accepting the tender of defense counsel from the insurer. *Olivares*, 894 N.E.2d at 594 (citing *Royal Ins. Co.*, 582 N.E.2d at 1239). Consequently, we think that Berklich's oral and e-mail communications with Granite Ridge do not as a matter of law equate to a valid and effective reservation of rights letter.

## E. Applicable Law Regarding Estoppel

Granite Ridge contends that since Harleysville did not effectuate a valid reservation of rights, Harleysville should be estopped from raising coverage defenses in this declaratory judgment action.

In Indiana, as well as other jurisdictions, the doctrines of estoppel and implied waiver prevent insurers from raising coverage defenses not properly reserved. *See, e.g., Transcon. Ins. Co. v. J.L. Manta*, 714 N.E.2d 1277, 1280-81 (Ind. Ct. App. 1999); *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 353 (10th Cir. 1996); *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996). The general rule is that the doctrine of estoppel cannot create or extend coverage in an insurance contract. *J.L. Manta*, 714 N.E.2d at 1280 (citing *Travelers Ins. Co. v. Eviston*, 37 N.E.2d 310, 316 (Ind. Ct. App. 1941); *Ky. Cent. Life & Acc. Ins. Co. v. White*, 19 N.E.2d 872, 875 (Ind. Ct. App. 1939)).

However, there are two exceptions to that general rule. *Id.* The first exception, which is inapplicable here, "applies where an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk." *Id.* (citing *Crown Life Ins. v. McBride*, 517 So.2d 660, 661-62 (Fla. 1987); *Bucon, Inc. v. Pa. Mfg. Assoc. Ins. Co.*, 547 N.Y.S.2d 925, 297 (1989)). The second, more pertinent exception, "applies where an insurer defends an action on behalf of an insured, with knowledge that would

20

provide a defense to coverage, but without a reservation of rights." *Id.* (quoting *Nationwide*, 673 N.E.2d at 1103-04) (internal quotation marks omitted). This exception "is predicated upon the insurer's conflict of interest: it is too likely to be defending the insured in the lawsuit while at the same time formulating policy defenses to deny coverage." *Id.* (quoting *Nationwide*, 673 N.E.2d at 1104). "It has also been justified by the fact that the insured is deprived of [its] right to control [its] defense." *Id.* (citing *Nationwide*, 673 N.E.2d at 1104).

This second exception was first applied in Indiana by the Indiana Court of Appeals in *Transcontinental Insurance Co. v. J.L. Manta*, 714 N.E.2d 1277, 1280-81 (Ind. Ct. App. 1999).[13] In *J.L. Manta*, the insurer failed to issue a reservation of rights letter and fifteen months elapsed between the time the insurer learned of its coverage defense until the time that it asserted the defense, during which the insurer controlled all aspects of the litigation, including discovery, litigation strategy, and settlement. *Id.* The Indiana Court of Appeals held: "[A]n insured suffers prejudice as a matter of law where an insurer, without reserving its rights and giving the insured an opportunity to determine whether to accept the tender of defense, assumes a complete defense of the underlying suit against the insured and controls the litigation for an extended period of time after becoming aware of a coverage defense." *Id.* It further explained that finding "prejudice as a matter of law in these cases prevents quibbling about 'whether the case was vigorously conducted by the parties and whether there were grounds for an appeal from the judgment.'" *Id.* (quoting *Allstate Ins. Co. v. Kepchar*, 592 N.E.2d 694, 699 (Ind. Ct. App. 1992)).

---

[13] Prior to the *J.L. Manta* decision,, the Indiana Court of Appeals mentioned the presence of this exception in other jurisdictions, stating that it is "widely recognized that, with respect to insured-insurer disputes, when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of noncoverage." *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 859 (Ind. Ct. App. 1998) (collecting cases).

*F. Harleysville Controlled the Litigation for an Extended Period of Time After Becoming Aware of a Coverage Defense and Thus Prejudice Is Presumed as a Matter of Law*

The facts in the instant case are similar to those presented to the Indiana Court of Appeals in *J.L. Manta*. On March 27, 2006, Harleysville received the Design Basics complaint alleging willful infringement of Design Basics's copyrights, and by March 31, Berklich had drafted a letter concerning Harleysville's desire to reserve its rights. By April 18, 2006, Berklich had drafted a more detailed reservation of rights letter (which he never sent)

And, by June 2006, Berklich had split the file with another adjustor because he felt it was improper for him to handle both the defense and the coverage issues, knowing that Harleysville needed a full reservation of rights and intended to file a declaratory judgment action. Thus, obviously Harleysville was aware of its coverage defenses shortly after the Design Basics suit commenced yet failed to timely issue a valid and effective reservation of rights, grossly bungling its attempts to do so.

On May 4, 2006, Harleysville retained Clancy of Kightlinger & Gray to defend Granite Ridge in the Design Basics suit, never again mentioning the reservation of its rights or, for that matter, the potential for a likely conflict of interest given its anticipated control over the litigation.[14] From May 4 to December 13, 2006, the date Harleysville filed its declaratory judgment action, Clancy defended Granite Ridge in the Design Basics suit, responding to the pleadings, performing discovery, and formulating legal strategy. She acknowledges that she was required to follow Harleysville's billing and litigation guidelines in her representation of Granite Ridge in the Design Basics suit. These guidelines required pre-approval for certain key aspects

---

[14] Clearly, Berklich was aware of the conflict, apparently from the outset, yet he alone continued to manage both the defense and coverage issues for another two months.

of the defense (that is, discovery, retention of experts, and research) and gave Harleysville control over settlement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

And, the record indicates that much of Clancy's written communications with respect to the Design Basics suit, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were sent to Berklich or another Harleysville adjustor without ever being copied to Granite Ridge or any other law firm. Likewise, she had telephone conferences with Berklich or another Harleysville adjustor that did not include Granite Ridge or any other law firm. In fact, Berklich's influence on the litigation is evident as early as May 1, 2006, before Clancy was even assigned to the case, when Berklich noted to his file that he "discussed ▮▮▮▮▮▮▮▮ with Dick Young [of] Kightlinger & Gray." (J.A. Tab 47 at F-34.)

Significantly, Clancy is the only attorney who ever filed an appearance on Granite Ridge's behalf during the relevant period. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While Clancy did have some communications during the relevant period with Vince Heiny of Haller & Colvin, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

the record reflects that these communications were limited in nature ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ On this

record, a reasonable factfinder could only conclude that, just like the insurer in *J.L. Manta*, Harleysville assumed the complete defense of Granite Ridge and controlled the litigation during the relevant period.[15] *J.L. Manta*, 714 N.E.2d at 1283.

The only remaining question then is whether the relevant time period in this instance amounts to an "extended period of time." *Id.* at 1282-83. In *J.L. Manta*, the insurer controlled the defense for fifteen months after it became aware of its coverage defense. *Id.* Here the relevant time period falls somewhere between six months (if we conclude that Harleysville was first aware of its coverage defense in June 2006, the time period in which Berklich admits that Harleysville intended to fully reserve its rights and file a declaratory judgment action), and nine months (if we conclude that Harleysville first became aware of its coverage defenses in March 2006 when it sent its letter attempting to initially reserve its rights), which is more likely. *See Cozzens v. Bazzani Bldg. Co.*, 456 F. Supp. 192, 200 (E.D. Mich. 1978) (stating that an insurer is on notice of a policy defense at "the earliest moment that [it] should have become aware of the substantial possibility" that a coverage defense might exist).

However, we need not discern this time period with any further particularity, as courts have found prejudice as a matter of law for time frames similar to either scenario. *See, e.g., City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1061-62 (8th Cir. 1979) (finding prejudice in a six-month delay); *Steptore v. Masco Constr. Co., Inc.*, 643 So.2d 1213, 1217 (La. 1994) (finding prejudice in a six-month delay); *AIG Haw. Ins. Co. v. Smith*, 891 P.2d 261, 266 (Hawaii 1995) (finding prejudice for a six and one-half month delay); *Dryden Mut. Ins. Co. v.*

---

[15] Also, as stated *supra*, attorney Philip Kalamaros was retained by a different insurer to defend different Granite Ridge entities in the Design Basics suit, and thus he did not serve as personal counsel to the Granite Ridge entities at issue in this declaratory judgment suit.

24

*Michaud*, 495 N.Y.S.2d 509, 510-11 (N.Y. App. Div. 1985) (finding prejudice for seven-month delay); *Britamco Underwriters, Inc. v. A&A Liquors of St. Cloud, Inc.*, Nos. C1-00-1498, C3-00-1499, 2001 WL 379028, at *2 (Minn. Ct. App. Apr. 17, 2001) (finding prejudice for eight-month delay); *Tom Raper, Inc. v. Safari Motor Coaches, Inc.*, No. IP99-1188-C-B/S, 2001 WL 13299, *8-10 (S.D. Inc. Jan. 4, 2001) (finding prejudice for nine-month delay); *New Amsterdam Cas. Co. v. Kelly*, 57 F. Supp. 209, 210, 212 (E.D. Pa. 1944) (finding prejudice for nine-month delay); *Perez v. Dean Equip., Inc.*, No. CIV. A. 04-3094, CIV. A. 05-6461, 2006 WL 2662999, at *3 (E.D. La. Sep. 15, 2006) (finding prejudice for nine-month delay). Consequently, we conclude as a matter of law that Harleysville, like the insurer in *J.L. Manta*, controlled the litigation for "an extended period of time." *J.L. Manta*, 714 N.E.2d at 1283.

Therefore, as in *J.L. Manta*, all of the elements of estoppel are evident in the instant case. Harleysville failed to effectively reserve its rights and explain its conflict of interest with Granite Ridge so that Granite Ridge could make "an intelligent choice" between retaining its own counsel or accepting Harleysville's defense counsel. *See Olivares*, 894 N.E.2d at 594. Harleysville then assumed a complete defense of the Design Basics suit for Granite Ridge and controlled the litigation for an extended period of time after becoming aware of a coverage defense. Consequently, applying Indiana law, Granite Ridge was prejudiced as a matter of law by the denial of its right to control its own defense, and thus Harleysville is estopped from asserting any coverage defenses against Granite Ridge.[16]

---

[16] Harleysville, in an apparent effort to mitigate its ineffective attempts to reserve its rights, also argues that it should not be estopped from raising its coverage defenses because, regardless of whether it reserved its rights, it filed a declaratory judgment action. (Pl.'s Resp. Br. to Defs.' Mots. for Summ. J. 11.) Indeed, as explained *supra*, Indiana law recognizes that an insurer has two options available to it when it questions whether a third party's claim raises a coverage defense: it can file a declaratory judgment action or hire independent counsel and defend its insured under a reservation of rights. *Safe Auto Ins. Co.*, 890 N.E.2d at 743. Here, however, it is the extended period

25

## VI. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that

Defendants' motions for partial summary judgment (Docket # 49, 51) be GRANTED.[17] The

Clerk is directed to send a copy of this Report and Recommendation to counsel for Plaintiff and

to counsel for Defendants. NOTICE IS HEREBY GIVEN that within ten days after being served

with a copy of this recommended disposition a party may serve and file specific, written

objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO

FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL

THE DISTRICT COURT'S ORDER.

SO ORDERED.

Enter for this 17th day of November, 2008.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

of time between Harleysville's learning of its coverage defense and its pursuit of one of these two options, whether it be the reservation of its rights or the filing of a declaratory judgment action, that triggers estoppel. *See* Russ & Segalia § 202.41 ("Whichever option is selected by the insurer, it must be clearly communicated to the insured in a timely fashion . . . ."). Thus, Harleysville's argument based on its filing of the declaratory judgment is equally unavailing.

[17] In addition, the undersigned Magistrate Judge recommends that Plaintiff's motion to strike (Docket # 93), to which it failed to file a reply brief, be DENIED AS MOOT, as the Court did not rely on the evidence that Plaintiff seeks to strike – that is, paragraph 6 of the affidavit of Defendant Anthony Reincke – in recommending that summary judgment be granted.

Also, the Court DENIES Plaintiff's motion for oral argument (Docket # 116), as Plaintiff was previously granted leave to file a sur-response to the motion for summary judgment and the issues have been thoroughly briefed by the parties. *See* N.D. Ind. L.R. 7.5 ("The granting of a motion for oral argument shall be wholly discretionary with the court."); *Sisk v. Guidant Corp.*, No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090, at *1 n.1 (S.D. Ind. Mar. 30, 2007) (denying request for oral argument where "briefings in this cause are quite thorough").

26